UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT (Dkt. 36, filed Sept. 10, 2018)

## I. INTRODUCTION

On June 8, 2018, plaintiffs Paul Cormier and Nicholas Shoner filed a class action complaint against defendant Carrier Corporation ("Carrier") in the United States District Court for the District of Connecticut. Dkt. 1 ("Compl."). In brief, plaintiffs allege injury arising from a manufacturing defect in air conditioners and heat pumps ("HVAC Systems") manufactured by Carrier, which purportedly causes a sticky substance to form in the system, causing degraded performance or failure of the HVAC systems. Id. ¶ 1. Plaintiffs assert claims based on breach of warranty, violation of state consumer protection laws, and unjust enrichment. See id.

On July 31, 2018, the district court in Connecticut, before which this action was pending, granted defendant's motion to transfer the case to this Court. Dkt. 17. On September 10, 2018, defendant filed the instant motion to dismiss plaintiffs' complaint. Dkt. 36 ("Mot.").[1] Plaintiffs filed an opposition on September 28, 2018, dkt. 46 ("Opp'n"), and defendant filed a reply on October 8, 2018, dkt. 48 ("Reply").

---

[1] Defendant also filed a request for judicial notice of the limited warranties covering the HVAC systems purchased by Cormier and Shoner. Dkt. 36-1. Plaintiffs have not objected nor disputed the accuracy of the documents. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." United States. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

The Court held a hearing on October 22, 2018. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege the following facts. An alleged manufacturing defect in Carrier's HVAC systems has caused widespread failures of thermal expansion valves ("TXVs") used in the units. Compl. ¶ 1. TXVs are "precision valves designed to regulate the rate of refrigerant-liquid flow." Id. ¶ 24. Plaintiffs allege that the defect arises from the use of a chemical rust inhibitor on the compressor motors which reacts with the refrigerant or oil used in the HVAC systems and forms a sticky substance on the TXVs. Id. ¶¶ 1–2, 27–31. According to plaintiffs, this causes "degraded performance and, often, acute failure of the HVAC systems." Id. ¶ 1.

Plaintiffs further allege that HVAC industry participants "went into high gear to identify the precise nature of the defect" by June 2014. Id. ¶ 28. In August 2014, Carrier submitted a white paper to Emerson, its supplier of compressors, explaining that the "root cause of the TXV contamination [was the] rust inhibitor called Ryconox." Id. ¶ 30. Plaintiffs aver that Carrier continued to sell affected units to "unsuspecting consumers without disclosing the defect so that Carrier could offload its inventory of thousands of affected HVAC systems." Id. ¶ 2. Plaintiffs allege that Carrier admitted the existence of the manufacturing defect in dealer service bulletins in 2014, but did not remove the affected systems from the shelves of distributors or disclose the defect to consumers. Id. Plaintiffs allege that Carrier did not distribute these bulletins publicly, thus consumers and contractors were not made aware of the defect. Id.

Carrier's HVAC systems are sold with a limited parts warranty that does not cover labor or incidental costs associated with necessary repairs. Id. ¶ 3. Instead of replacing the parts necessary to remove the contamination from the system "as required by the

---

plaintiffs refer extensively to the warranties in the complaint and they form the basis of their claims for breach of express warranty, the Court takes judicial notice of the warranties. See Hoey v. Sony Elecs. Inc., 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007) (allowing judicial notice of express warranty); Weinstein v. Saturn Corp., No. 07-cv-0348-MMC, 2007 WL 1342604, at *1 (N.D. Cal. May 8, 2007) ("Because the SAC relies on the warranty and plaintiff has offered the relevant excerpts therefrom, the Court takes judicial notice of the contents of the warranty.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

terms of the warranty," Carrier "instructed service personnel to inject the failed systems with yet another chemical, called A/C Re-New (also known as Zerol Ice), which dissolves [the] clogs." Id. ¶ 4. Plaintiffs contend that an A/C Re-New injection is not an adequate repair because it "merely adds more contamination" and that this "contamination continues to circulate through the HVAC system, posing a likelihood of future re-occurrence[.]" Id. ¶¶ 33, 35. Moreover, A/C Re-New allegedly causes another set of problems because "[i]t dissolves metal components, it causes premature wear, and it damages and devalues the HVAC systems." Id. ¶ 4.

According to plaintiffs, the use of A/C Re-New is an insufficient "quick fix," and that "[i]n order to remove the contamination, Carrier at a minimum should have replaced the compressors that contain the rust inhibitor, flushed the systems, and replaced the oil, refrigerant, and TXVs." Id. ¶¶ 32–33. Plaintiffs aver that "[b]y failing to disclose the existence of this known defect, and refusing to cover the full costs of labor, Carrier has unfairly foisted repair costs onto consumers." Id. ¶ 3.

Plaintiffs allege that Cormier, a resident of Massachusetts, purchased a new Bryant-branded HVAC system when he bought his new-construction home in October 2014. Id. ¶¶ 56–57. Plaintiffs allege that "[p]rior to completing his purchase, Cormier conducted a detailed inspection of both the indoor and outdoor units of his HVAC system along with a representative of the builder[.]" Id. ¶ 57. During this "detailed inspection" of the HVAC system prior to purchase, "Cormier saw no disclosure on the product (or anywhere else) that the HVAC system contained a contaminant that rendered it defective[.]" Id. Cormier was also "provided with a user manual and warranty for the system, neither of which disclosed the defect." Id. Plaintiffs allege that if Carrier had disclosed the defect, "Cormier would not have purchased the Carrier system." Id.

Cormier's system failed within two years due to "a restricted TXC," and per the Carrier bulletin, an A/C technician injected Cormier's system with A/C Re-New. Id. ¶ 58. Cormier paid $314.00 out of pocket for the A/C Re-New injection. Id. Cormier claims that his system "still contains the defective contaminant and has suffered further damage caused by the injection of A/C Re-New." Id.

Shoner, a resident of Michigan, purchased a Payne-branded HVAC system in June 2014. Id. ¶ 60. Shoner alleges that prior to this purchase, he "reviewed Carrier brochures from the distributor, which provided information regarding system capacity and specifications, and a display at the distributor," and that none of these materials disclosed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

that "a chemical contaminant would cause [the HVAC systems] to cease functioning soon after installation." Id. Shoner further alleges that he would not have purchased the Carrier system if Carrier had disclosed the defect. Id.

Approximately one year later, Shoner's HVAC system failed, and a technician determined that the evaporator coil was freezing and the TXV had to be replaced. Id. ¶ 62. Shoner purchased a new TXC for $84.82 and paid a contractor approximately $300 to replace the TXC. Id. ¶ 63. After the evaporator coil began to freeze again, a technician injected Shoner's HVAC system with A/C-Renew, for which Shoner paid between $200 and $300. Id. ¶ 64. Plaintiffs allege that "Shoner's system still contains the defective contaminant and has suffered further damage caused by the injection of A/C Re-New." Id.

On April 25, 2018, plaintiffs, through their counsel, sent a demand letter to Carrier asserting that Carrier had breached its warranty and violated consumer protection and other laws. Id. ¶ 66, Exhibit A. Plaintiffs demanded that Carrier: (1) replace all affected HVAC systems, or at least the parts that are necessary to fully remove the rust inhibitor that causes clogged TXVs as well as any A/C Re-New that was injected; and (2) reimburse plaintiffs and all other purchasers and owners of the affected HVAC systems who incurred out-of-pocket costs to diagnose and repair their systems. Id.

### III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

## IV. DISCUSSION

### A. Plaintiffs' Warranty Claims

Plaintiffs bring five breach of warranty claims against Carrier: (1) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–2312; (2) breach of express warranty, Mass. Gen. Laws ch. 106, § 2-313; (3) breach of implied warranty, Mass. Gen. Laws ch. 106, § 2-314; (4) breach of express warranty, M.C.L. § 440.2313; and (5) breach of implied warranty, M.C.L. § 440.2314. The MMWA creates a civil cause of action for consumers to enforce the terms of implied or express warranties. See 15 U.S.C. § 2310(d). Thus, plaintiffs' claims under the MMWA "stand or fall with [plaintiffs'] express and implied warranty claims under state law." Clemens v. Daimler Chrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008).

Carrier contends that plaintiffs' breach of warranty claims fail for the same reasons that this Court dismissed the breach of warranty claims in Oddo v. Arcoaire Air Conditioning & Heating, et al., No. 8:14-cv-01985-CAS, 2017 WL 372975 (C.D. Cal. Jan. 24, 2017), a case involving substantially similar allegations. Mot. at 2–3, 6. Plaintiffs respond that "the allegations here do not vary materially from the allegations in [the Oddo case], insofar as the Plaintiffs' systems here suffered TXV failures, were injected with Zerol Ice, and are currently functioning." Opp'n at 3. Neither party provides any argument or authority under the laws of Massachusetts or Michigan with respect to the viability of plaintiffs' warranty claims.

In Oddo, this Court found that the plaintiffs did not state a claim for breach of express warranty because: (1) the plaintiffs did not allege that they submitted a claim to Carrier for a *specific request* for repair under the warranty; (2) the plaintiffs' allegations were not sufficient to plead that the warranties were invalid or unenforceable under either an unconscionability theory or a "failure of essential purpose" theory; and (3) the plaintiffs failed to plead that Carrier failed to satisfy its obligations under the warranty because the plaintiffs did not allege that there was any further failure or malfunction of their HVAC units after the injections of A/C Re-New. 2017 WL 372975, at *6–14. The Court also found that the plaintiffs did not state a claim for breach of implied warranty because they did not allege that the injections of A/C Re-New into their systems resulted in any actual defects.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

At oral argument, plaintiffs conceded that, for purposes of this motion, their express and implied warranty claims would fail under this Court's analysis in Oddo. Plaintiffs also indicated that they do not intend to further pursue these claims in this litigation. Accordingly, the Court **DISMISSES** plaintiffs' warranty claims.

### B.      Plaintiffs' Consumer Protection Claims Based on Affirmative Misrepresentations

Plaintiffs assert two claims based on violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1–11 ("Chapter 93A"), and the Michigan Consumer Protection Act, M.C.L. §§ 445.901–.922 ("MCPA"). In Oddo, the Court dismissed the plaintiffs' consumer protection claims based on affirmative misrepresentations because the statements regarding the efficiency of the HVAC systems that the plaintiffs relied on were puffery and because plaintiffs did not allege that their units failed to function at the efficiency ratings indicated for their respective units. 2017 WL 372975, at *29. Carrier contends that plaintiffs' consumer protection claims fail to the extent they are premised on affirmative misrepresentations for the same reasons that this Court dismissed these claims in Oddo. Mot. at 6. Again, neither party provides any argument or authority under the laws of Massachusetts or Michigan with respect to the viability of plaintiffs' affirmative misrepresentation claims. At oral argument, plaintiffs conceded that, for purposes of this motion, their consumer protection claims based on affirmative misrepresentations would also fail under this Court's analysis in Oddo. Plaintiffs also indicated that they do not intend to further pursue these claims in this litigation. Accordingly, the Court **DISMISSES** plaintiffs' consumer protection claims to the extent these claims rely on affirmative misrepresentations.

### C.      Plaintiffs' Consumer Protection Claims Based on Omissions

Plaintiffs' consumer protection claims are also based on Carrier's alleged omissions. Carrier contends that plaintiffs' claims based on Carrier's omissions fail because they do not satisfy Rule 9(b)'s particularity requirement and because they do not meet specific requirements of the consumer protection laws of Massachusetts and Michigan.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

### 1. Cormier's Claim for Violation of the Massachusetts Consumer Protection Act

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Mass. Gen. Laws ch. 93A, §2(a). To state a claim under Chapter 93A, a plaintiff must allege facts sufficient to establish the following four elements:

> First, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act occurred in the conduct of any trade or commerce; third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

Rafferty v. Merck & Co., Inc., 479 Mass. 141, 161 (2018). "An act or practice is 'deceptive' if it has the 'capacity or tendency' to deceive." Estrada v. Progressive Direct Ins. Co., 53 F. Supp. 3d 484, 499 (D. Mass. 2014) (quoting In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 185 (1st Cir. 2009)). "The plaintiff need not necessarily prove actual reliance on a misrepresentation; rather, the plaintiff must prove a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." In re Pharm, 582 F.3d at 185 (internal quotation marks omitted). Chapter 93A "allows *any* person who has been injured by trade or commerce *indirectly* affecting the people of this Commonwealth to bring a cause of action" and "there is no requirement of contractual privity between the plaintiffs and the defendants under [Chapter 93A]." Ciardi v. Hoffman-La Roche, Ltd., 436 Mass. 53, 60 (2002) (emphasis in the original).

Under Rule 9(b), a claim sounding in fraud must be plead with particularity such that it "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." See Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citing Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). But the Rule 9(b) standard is somewhat relaxed for claims based on an omission because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." Huntair, Inc. v. Gladstone, 774 F. Supp. 2d 1035, 1044 (N.D. Cal. 2011) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

Cormier alleges that, prior to purchasing his new-construction home in October 2014, which came with a Bryant-branded HVAC system, he "conducted a detailed inspection of both the indoor and outdoor units of his HVAC system along with a representative of the builder" and that during this "detailed inspection of the product prior to purchase, Cormier saw no disclosure on the product (or anywhere else) that the HVAC system contained a contaminant that rendered it defective[.]" Compl. ¶ 57. Cormier also alleges that he "was provided with a user manual and warranty for the system, neither of which disclosed the defect." Id. Cormier, however, does not allege that he reviewed the user manual and warranty for the system prior to purchasing his home. Cormier further alleges that he would not have purchased his HVAC system, or would have paid significantly less for it, had he known "that Carrier's HVAC systems contained a chemical contaminant that cause TXV failures necessitating expensive repairs and, also, damage to the systems." Id. ¶ 117. As a result of Carrier's alleged failure to disclose the defect, plaintiffs assert that Carrier violated Chapter 93A by "uniformly representing to Cormier . . . by means of its advertising and marketing, false information, and product packaging (including federally required EnergyGuide labels) regarding the efficiency, performance, reliability, and warranty terms of its HVAC Systems." Id. ¶ 113.

Carrier argues that plaintiffs have failed to state a claim for violation of Chapter 93A because: (1) Cormier's allegations of causation are insufficient under Federal Rule of Civil Procedure 9(b) because he fails to allege altogether that he reviewed any Carrier information prior to making his purchase, mot. at 10; (2) Cormier's allegations that he would not have purchased the Carrier HVAC system are implausible, id. at 12; and (3) Cormier has failed to allege that "Carrier engaged in sufficiently reprehensible conduct to give rise to liability under Chapter 93A," id.

The Court concludes that Cormier has adequately pled the particulars of his omission-based claim under Rule 9(b). Cormier pleads the "who, what, when, where, and how" of Carrier's alleged omission by alleging that in October of 2014 (when), compl. ¶ 57, Carrier (who) omitted information about a defect that causes a sticky substance to form in the system (what), id. ¶ 1, by failing to include information about the defect on the product itself (how), id. ¶ 57, because it wanted to "offload its inventory of thousands of affected HVAC systems" to "unsuspecting consumers" (why), id. ¶ 2. Although Carrier contends that Cormier's allegations do not sufficiently allege whether his inspection included any review of written materials," mot. at 20, the Court understands Cormier's allegation that he conducted "a detailed inspection" to mean that Cormier reviewed the product itself as well as any information that Carrier placed on the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

indoor and outdoor units of Cormier's HVAC system. In sum, Cormier's allegations provide enough information about the nature of Carrier's alleged omission such that Carrier can prepare an adequate answer. The Court further finds that Carrier's arguments regarding the plausibility of Cormier's allegations and whether Carrier's alleged actions are sufficiently reprehensible are not appropriately determined at this stage in the action.

The Court therefore **DENIES** Carrier's motion to dismiss Cormier's Chapter 93A claim based on fraudulent omission and concealment.

### 2. Shoner's Claim for Violation of the Michigan Consumer Protection Act

The MCPA provides that [u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." M.C.L. § 445.903. Shoner's omission-based claim is based on § 445.903(1)(s), which defines an unfair, unconscionable, or deceptive act as "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." M.C.L. § 445.903(1)(s).

Shoner alleges that he purchased a Payne-branded HVAC system in June 2014 from Behler-Young Company in Michigan after reviewing Carrier brochures from the distributor describing the system capacity and specifications, as well as a display at the distributor. Compl. ¶ 60. Shoner alleges that he would not have purchased the Carrier system if Carrier had disclosed the defect on its brochures or display. Id.

Carrier argues that plaintiffs fail to state a claim for violation of the Michigan Consumer Protection Act ("MCPA") because: (1) Michigan law limits omission-based fraud claims to cases where a plaintiff has alleged a predicate affirmative misrepresentation, mot. at 13; (2) a statutory exemption provides that the MCPA does not apply to transactions specifically authorized by law, id. at 15–20; and (3) Shoner's allegations lack the same degree of particularity as the allegations of the Oddo plaintiffs who were allowed to proceed, id. at 20.

In response to Carrier's argument that the MCPA requires an affirmative misrepresentation, plaintiffs explain that this requirement only applies to § 445.903(1)(cc), which defines an unlawful unfair, unconscionable, or deceptive act as "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Opp'n at 10–11 (quoting M.C.L. § 445.903(1)(cc)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

Carrier responds that Michigan law requires courts "to construe the provisions of the MCPA with reference to the common-law of fraud," which requires a material representation even in cases involving "silent fraud." Reply at 15 (quoting <u>Zine v. Chrysler Corp.</u>, 236 Mich. App. 261, 283 (1999)).

"Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred under circumstances where there was a legal duty of disclosure." <u>M&D, Inc. v. W.B. McConkey</u>, 231 Mich. App. 22, 29 (1998). Thus, under Michigan law, "the touchstone of liability for misdirection or 'silent fraud' is that *some* form of representation has been made and that it was or proved to be false. In other words . . . at least as applied to fraud cases, there is no general inchoate duty to disclose all hidden defects." <u>Id.</u> at 30. In <u>M&D</u>, the Court of Appeals of Michigan examined Michigan Supreme Court precedent regarding the issue of whether silence as to a material fact is equivalent to a false representation and found that "in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading." <u>Id.</u> at 31. While there appears to be some conflicting authority regarding whether § 445.903(1)(s) itself creates an independent duty to disclose, the Court is persuaded by <u>Hendricks v. DSW Shoe Warehouse, Inc.</u>, 444 F. Supp. 2d 775, 782 (W.D. Mich. 2006), which examined the MCPA with reference to Michigan's common law tort of silent fraud and found that "Michigan courts would not recognize a claim under M.C.L. § 445.903(1)(s) in the absence of a duty of disclosure."

Shoner fails to sufficiently allege that Carrier had a duty to disclose or that Carrier's omission was based upon a statement made in response to a specific inquiry by Shoner. It appears that Carrier does not owe a fiduciary duty to Shoner, and plaintiffs have not provided any other legal grounds upon which Carrier owes a duty to Shoner. Although plaintiffs allege that Carrier "had a duty to disclose the material defect because it had exclusive knowledge of the presence of Ryconox (i.e., a material defect) and such contamination was not reasonably accessible to Shoner," the Court does not accept this conclusory allegation as true.

Accordingly, Shoner fails to state a claim under the MCPA based on omissions because he fails to allege, in a non-conclusory manner, that Carrier was under a legal duty to disclose the hidden defects with its HVAC systems. The Court does not reach defendants' arguments regarding the other grounds upon which Shoner's MCPA claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

should be dismissed. The Court therefore **DISMISSES** Shoner's MCPA claim based on fraudulent omission and concealment.

### D. Plaintiffs' Unjust Enrichment Claims

Plaintiffs seek to recover under a theory of unjust enrichment because plaintiffs would not have purchased the allegedly defective systems, or would have paid less for them, if they had known of the defect. Carrier's retention of the profits it earned from plaintiffs' purchases of the allegedly defective systems would, according to plaintiffs, result in Carrier being unjustly enriched. Compl. ¶¶ 98, 100, 103, 105.

#### 1. Unjust Enrichment under Michigan Law

"[T]o state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and [defendant]." Schechner v. Whirlpool Corp., 237 F. Supp. 3d 601, 617–18 (E.D. Mich. 2017) (citing Smith v. Glenmark Generics, Inc., USA, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014). Plaintiffs' reliance on Kammer Asphalt Paving Co. v. E. China Twp. Sch., 443 Mich. 176 (1993), to suggest otherwise is misplaced. Kammer allowed an unjust enrichment claim to proceed when a subcontractor indirectly conferred a benefit on the defendant, but the court relied on the fact that the defendant had directly and "repeatedly assured plaintiff of payment[.]" Id. at 188–89.

Shoner alleges that he purchased a Payne-Branded HVAC system from Behler-Young Company. Compl. ¶ 17. Plaintiffs further allege that Shoner, by purchasing a Carrier HVAC system, conferred a "direct benefit in the form of profits on Carrier" and that "Carrier has knowingly retained the benefits without paying the value thereof." Id. ¶ 103. Plaintiffs also allege that Shoner purchased a Carrier HVAC system from Carrier's "agents," but do not allege any facts supporting an agency relationship between Behler-Young Company and Carrier. Id. ¶ 104.

Shoner fails to allege sufficient facts to support his contention that he conferred a direct benefit on Carrier or that he otherwise had any direct interaction with Carrier. Although Shoner alleges that Carrier's profits are a "direct benefit" of his purchase, the Court does not accept this allegation as true because Shoner inconsistently alleges that he bought his HVAC System from Behler-Young Company, not Carrier. Plaintiffs also argue that the requirement of a direct relationship is satisfied by Shoner's allegation that he purchased his HVAC system from one of Carrier's agents, opp'n at 22, but plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

do not allege any facts to support this conclusory allegation nor do they cite any authority supporting their theory that an agency relationship constitutes a "direct relationship" under Michigan law. The Court therefore **DISMISSES** Shoner's unjust enrichment claim.

In light of the foregoing, the Court does not reach the parties' dispute as to whether Michigan law allows a party to plead unjust enrichment in the alternative to a breach of warranty claim.

### 2. Unjust Enrichment under Massachusetts Law

Carrier argues that Cormier's claim for unjust enrichment fails as a matter of law because unjust enrichment claims in Massachusetts are precluded by his warranty and Chapter 93A claims. Mot. at 6–9. Indeed, under Massachusetts law, a plaintiff may not recover under an unjust enrichment theory where an express contract covers the subject matter in dispute. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment"); Wong v. Nieboer, 2006 WL 1172191, at *4 (Mass. App. Div. Apr. 15, 2006) (claims for unjust enrichment are not viable "where there is an existing express contract covering the same subject matter"). A plaintiff also may not recover "on both legal and equitable claims arising from the same facts[.]" Depianti v. Jan-Pro Franchising Int'l, Inc., 39 F. Supp. 3d 112, 143 (D. Mass. 2014).

Although plaintiffs plead that their HVAC systems are covered by an express warranty and that Carrier has violated Chapter 93A, plaintiffs contend that they should be allowed to plead their unjust enrichment claims in the alternative. Opp'n at 21. Massachusetts law will preclude Cormier from recovering under an unjust enrichment theory if it is established that a valid express contract covers his HVAC system or that Chapter 93A provides an adequate remedy at law, but at this stage Cormier may plead unjust enrichment in the alternative to his breach of warranty and Chapter 93A claims. See Zelby Holdings, Inc. v. Videogenix, Inc., 92 Mass. App. Ct. 86, 92–93 (2017) ("Here, [plaintiff] properly pleaded alternative bases for relief, and dismissal of its unjust enrichment claim would be inappropriate as it presupposes the existence of a valid underlying contract."); Lass v. Bank of America, N.A., 695 F.3d 129, 140–41 (1st Cir. 2012) (acknowledging that damages for breach of contract and unjust enrichment are mutually exclusive but explaining that "it is accepted practice to pursue both theories at the pleading stage," and that the trial judge "will be in a better position once the record is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:18-cv-07030-CAS(Ex) | | Date | October 22, 2018 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | | |

more developed to determine whether the unjust enrichment claim should survive"); Depianti, 39 F. Supp. 3d at 143 (explaining that procedural law allows alternative contentions until the evidence is closed).

The Court therefore **DENIES** Carrier's motion to dismiss Cormier's unjust enrichment claim.

## VI. CONCLUSION

Breach of Warranty Claims

The Court **DISMISSES without prejudice** claims 1, 6, 7, 8, and 9.

Unjust Enrichment

The Court **DENIES** Carrier's motion to dismiss claim 2.  The Court **DISMISSES without prejudice** claim 3.

Misrepresentation

The Court **DISMISSES without prejudice** claims 4 and 5 *to the extent such claims rely on alleged misrepresentations.*

Fraudulent Omission and Concealment

The Court **DENIES** Carrier's motion to dismiss claim 4.  The Court **DISMISSES without prejudice** claim 5 *to the extent this claim relies on alleged omissions or concealment*.

Plaintiffs shall have **fourteen (14)** days from the date of this order to file an amended complaint addressing the deficiencies identified herein.

IT IS SO ORDERED.

|  |  | 00 | : | 00 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |