## CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | March 25, 2019 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) - PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Dkt. 63, filed January 18, 2019)

PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT OF WAYNE SCHNEYER (Dkt. 64, January 18, 2019)

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PAUL J. SIKORSKY (Dkt. 75, filed February 1, 2019)

## I.    INTRODUCTION

On June 8, 2018, plaintiffs Paul Cormier and Nicholas Shoner filed a class action complaint against defendant Carrier Corporation ("Carrier"). Dkt. 1 ("Compl."). In brief, plaintiffs alleged injury arising from a manufacturing defect in air conditioners and heat pumps ("HVAC Systems") manufactured by Carrier, which purportedly causes a sticky substance to form in the system, causing degraded performance or failure of the HVAC systems. Id. ¶ 1. Plaintiffs asserted claims based on breach of warranty, violation of state consumer protection laws, and unjust enrichment. See id.

On July 31, 2018, Carrier filed a motion to dismiss plaintiffs' complaint. Dkt. 40. On January 24, 2017, the Court granted in part, and denied in part, Carrier's motion to dismiss. Dkt. 52 ("MTD Order"). The remaining claims are limited to Cormier's claims under Massachusetts law for unjust enrichment and fraudulent omission in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1–11 ("Chapter 93A"). Id. at 14.

On January 18, 2019, Cormier filed the instant motion for class certification. Dkt. 115 ("Mot."). Carrier filed an opposition on February 1, 2019. Dkt. 74 ("Opp'n"). Cormier filed a reply on February 11, 2019. Dkt. 80 ("Reply").

On January 18, 2019, Cormier filed a motion to exclude the expert report of Carrier's expert, Wayne Schneyer. Dkt. 64. Carrier filed an opposition on February 1, 2019, dkt. 74, and Cormier filed a reply on February 11, 2019, dkt. 81. On February 1, 2019, Carrier filed a motion to exclude the opinions of Paul Sikorsky. Dkt. 75. Cormier filed an opposition on February 15, 2019, dkt. 88, and Carrier filed a reply on February 25, 2019, dkt. 94.

The Court held a hearing on March 11, 2019. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Cormier alleges the following facts. An alleged manufacturing defect in Carrier's HVAC systems has caused widespread failures of thermal expansion valves ("TXVs") used in the units. Compl. ¶ 1. TXVs are "precision valves designed to regulate the rate of refrigerant-liquid flow." Id. ¶ 24. Cormier alleges that the defect arises from the use of a chemical rust inhibitor on the compressor motors which reacts with the refrigerant or oil used in the HVAC systems and forms a sticky substance on the TXVs. Id. ¶¶ 1–2, 27–31. According to Cormier, this causes "degraded performance and, often, acute failure of the HVAC systems." Id. ¶ 1.

Cormier further alleges that HVAC industry participants "went into high gear to identify the precise nature of the defect" by June 2014. Id. ¶ 28. In August 2014, Carrier submitted a white paper to Emerson, its supplier of compressors, explaining that the "root cause of the TXV contamination [was the] rust inhibitor called Ryconox." Id. ¶ 30. Cormier avers that Carrier continued to sell affected units to "unsuspecting consumers without disclosing the defect so that Carrier could offload its inventory of thousands of affected HVAC systems." Id. ¶ 2. Cormier alleges that Carrier admitted the existence of the manufacturing defect in dealer service bulletins in 2014, but did not remove the affected systems from the shelves of distributors or disclose the defect to consumers. Id. Cormier alleges that Carrier did not distribute these bulletins publicly, thus consumers and contractors were not made aware of the defect. Id.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | March 25, 2019 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

Carrier's HVAC systems are sold with a limited parts warranty that does not cover labor or incidental costs associated with necessary repairs. Id. ¶ 3. Instead of replacing the parts necessary to remove the contamination from the system "as required by the terms of the warranty," Carrier "instructed service personnel to inject the failed systems with yet another chemical, called A/C Re-New (also known as Zerol Ice), which dissolves [the] clogs." Id. ¶ 4. Cormier contends that an A/C Re-New injection is not an adequate repair because it "merely adds more contamination" and that this "contamination continues to circulate through the HVAC system, posing a likelihood of future re-occurrence[.]" Id. ¶¶ 33, 35. Moreover, A/C Re-New allegedly causes another set of problems because "[i]t dissolves metal components, it causes premature wear, and it damages and devalues the HVAC systems." Id. ¶ 4.

According to Cormier, the use of A/C Re-New is an insufficient "quick fix," and that "[i]n order to remove the contamination, Carrier at a minimum should have replaced the compressors that contain the rust inhibitor, flushed the systems, and replaced the oil, refrigerant, and TXVs." Id. ¶¶ 32–33. Cormier avers that "[b]y failing to disclose the existence of this known defect, and refusing to cover the full costs of labor, Carrier has unfairly foisted repair costs onto consumers." Id. ¶ 3.

Cormier is a resident of Massachusetts who purchased a new Bryant-branded HVAC system when he bought his newly-constructed home in October 2014. Id. ¶¶ 56–57. Cormier alleges that "[p]rior to completing his purchase, he conducted a detailed inspection of both the indoor and outdoor units of his HVAC system along with a representative of the builder[.]" Id. ¶ 57. During this "detailed inspection" of the HVAC system prior to purchase, "Cormier saw no disclosure on the product (or anywhere else) that the HVAC system contained a contaminant that rendered it defective[.]" Id. Cormier was also "provided with a user manual and warranty for the system, neither of which disclosed the defect." Id. Cormier alleges that if Carrier had disclosed the defect, "[he] would not have purchased the Carrier system." Id.

Cormier's system failed within two years due to "a restricted TXC," and per the Carrier bulletin, an A/C technician injected Cormier's system with A/C Re-New. Id. ¶ 58. Cormier paid $314.00 out of pocket for the A/C Re-New injection. Id. Cormier claims that his system "still contains the defective contaminant and has suffered further damage caused by the injection of A/C Re-New." Id.

## III.  LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983). Federal Rule of Civil Procedure 23 governs class actions. For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a) . . ., and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P .A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . .  compliance with the rule." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. However, the Supreme Court has strongly cautioned that "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

First, plaintiff must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (citation omitted). Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Dukes, 564 U.S. at 345. Plaintiff here seeks to maintain certification under Rule 23(b)(3).

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621 (1997)). If "common questions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | March 25, 2019 |
|----------|----------------------|------|----------------|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id. Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. In re N.D. Cal., Dalkon Shield IUD Products Liability Litig., 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

## IV.   DISCUSSION

### A.   The Proposed Class

Cormier seeks to be appointed class representative of the Massachusetts Class, which is defined as follows:

> All original purchasers in Massachusetts, including individuals and entities, of new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units, and not for resale, that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Dkt. 63, Plaintiff's Notice of Class Certification Motion, at i. Cormier clarifies that he intends the term "original purchasers" to include both persons who acquired new HVAC units and purchasers of newly-constructed homes that contained HVAC units. Id. Cormier seeks certification of claims under Massachusetts law for: (a) violations of Chapter 93A, and (b) unjust enrichment. Id.

| Case No. | 2:18-cv-07030-CAS(Ex) | Date | March 25, 2019 |
|---|---|---|---|
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | |

### B. Class Certification in <u>Oddo v. Arcoaire, et al.</u>

Counsel for both parties are also litigating a companion case in this Court involving substantially similar allegations. <u>See</u> <u>Oddo v. Arvoaire Air Conditioning & Heating, et al.</u>, No. 18-cv-01985-CAS. The plaintiffs moved for class certification in <u>Oddo</u>, and both parties here have explicitly incorporated all briefs, declarations, and exhibits filed by the <u>Oddo</u> parties in their briefs concerning the instant motion for class certification.

### C. Chapter 93A

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Mass. Gen. Laws ch. 93A, §2(a). To state a claim under Chapter 93A, a plaintiff must allege facts sufficient to establish the following four elements:

> [F]irst, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act occurred in the conduct of any trade or commerce; third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

<u>Rafferty v. Merck & Co., Inc.</u>, 479 Mass. 141, 161 (2018). "An act or practice is 'deceptive' if it has the 'capacity or tendency' to deceive." <u>Estrada v. Progressive Direct Ins. Co.</u>, 53 F. Supp. 3d 484, 499 (D. Mass. 2014) (quoting <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 582 F.3d 156, 185 (1st Cir. 2009)). "The plaintiff need not necessarily prove actual reliance on a misrepresentation; rather, the plaintiff must prove a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." <u>In re Pharm</u>, 582 F.3d at 185 (internal quotation marks omitted). Chapter 93A "allows *any* person who has been injured by trade or commerce *indirectly* affecting the people of this Commonwealth to bring a cause of action" and "there is no requirement of contractual privity between the plaintiffs and the defendants under [Chapter 93A]." <u>Ciardi v. Hoffman-La Roche, Ltd.</u>, 436 Mass. 53, 60 (2002) (emphasis in the original).

Cormier's Chapter 93A claim is premised on Carrier's allegedly fraudulent omission of the defect "by means of its advertising and marketing, false information, and product packaging (including federally required EnergyGuide labels) regarding the efficiency, performance, reliability, and warranty terms of its HVAC systems." Compl. ¶

113.  According to Cormier, he would not have purchased the Carrier system if Carrier had disclosed the defect.  Id. ¶ 57.

Although Chapter 93A does not require a showing of reliance, it does require a showing of causation.  See Frappier v. Countrywide Home Loans, Inc., No. 09-cv-11006-DJC, 2013 WL 1308602, at *19 (D. Mass. Mar. 31, 2013) (disclosures "would not have made any difference" if plaintiff "did not read them").  Accordingly, to satisfy the predominance requirement of Rule 23(b)(3), Cormier must demonstrate that class members were exposed to the same misrepresentations or omissions.  See Kwaak v. Pfizer, Inc., 881 N.E.2d 812, 818 (Mass. App. Ct. 2008) (finding "insufficient information in the record to identify any . . . similarity of exposure, deception, and causation," and rejecting a class that included "everyone who purchased Listerine products during the advertising campaign, regardless of whether a purchaser was exposed to the campaign."); Markarian v. Conn. Mut. Life Ins. Co., 202 F.R.D. 60, 69 (D. Mass. 2001) ("[T]he total mix of information made available to each purchaser was distinctive, if not unique, and the question of causation must be decided with regard to each purchaser in the context of the particular information that he or she received.").

In its decision on plaintiffs' class certification motion in Oddo, the Court found that plaintiffs' proposed classes lacked cohesion because they included persons who purchased HVAC units as well as persons who purchased new homes which already had a Carrier HVAC system installed.  Oddo Dkt. 202 (attached as Exhibit A).  The Court explained that the plaintiffs in Oddo failed to show that homebuyers would have been exposed to a disclosure by Carrier if it had made one, much less attach any importance to such a disclosure.  Id.  The proposed class here, because it also includes both homebuyers and purchasers of HVAC units, suffers from the same defects the Court identified in its tentative ruling on plaintiffs' class certification motion in Oddo.

The Court also finds that Cormier, in particular, fails to satisfy the typicality requirement because he is unlikely to establish causation under Chapter 93A.  It appears that Cormier was not exposed to any of Carrier's materials until after he had already negotiated and agreed to the purchase price of his new home.  See Dkt. 73-2, Transcript of Deposition of Cormier at 44:24–45:10, 54:5–21, 54:25–55:3, 56:1–1 (explaining that he did not review Carrier materials until he participated in an inspection of his new home with a representative from the construction company after he had agreed to purchase his home).  Moreover, Cormier stated that he would have not tried to renegotiate the price of his home based on anything he learned during the course of this inspection.  Id. at

116:12–23.  Cormier is thus subject to a unique defense of failure to demonstrate causation because he did not review any Carrier materials until after he had already negotiated the price of his home and entered into a purchase agreement.

Accordingly, the Court declines to certify Cormier's claim for violation of Chapter 93A.

### D.    Unjust Enrichment

The Court also finds that individualized questions predominate with respect to Cormier's claim for unjust enrichment.  "To succeed in a claim for unjust enrichment, a plaintiff must show: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment of its value.'"  Blake v. Prof'l Coin Grading Serv., 898 F. Supp. 2d 365, 390 (D. Mass. 2012) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).  Whether a class member conveyed to Carrier a benefit that would be unjust for Carrier to retain depends on whether a given class member was exposed to any omissions, whether that class member ever actually experienced any problems with his or her HVAC system, and what Carrier did in response to that class member's request for repair, if any.  See, e.g., Pagliaroni v. Mastic Home Exteriors, Inc., No. CV 12-10164-DJC, 2015 WL 5568624, at *12 (D. Mass. Sept. 22, 2015) ("Plaintiffs would need to demonstrate that due to the condition of their [products] and notwithstanding any warranty payments offered . . . the Plaintiff conveyed on Defendants a benefit that would be unjust for Defendants to retain.").  These individualized questions predominate over common questions.  Accordingly, the Court declines to certify Cormier's claim for unjust enrichment under Massachusetts law.

### E.    Motions to Strike Expert Testimony

Both parties raise numerous issues with the expert testimony proffered by the opposing party.  However, even accepting Cormier's expert testimony in its entirety, and disregarding Carrier's expert testimony, the Court finds that class certification is inappropriate for the reasons stated above.  Accordingly, the Court **DENIES** the parties' various motions to strike expert testimony as moot.

| | CIVIL MINUTES – GENERAL | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:18-cv-07030-CAS(Ex) | | Date | March 25, 2019 |
| Title | PAUL CORMIER ET AL. v. CARRIER CORPORATION | | | |

## V.     CONCLUSION

In accordance with the foregoing, the Court **DENIES without prejudice** Cormier's motion for class certification.

The Court **DENIES** as moot Carrier's motion to exclude opinions of Sikorsky and Cormier's motion to exclude the expert report of Schneyer.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

EXHIBIT A

## CIVIL MINUTES – GENERAL

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Dkt. 115, filed August 3, 2018)

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PAUL J. SIKORSKY (Dkt. 137, filed November 2, 2018)

PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF PROFESSOR RAVI DHAR (Dkt. 156, filed December 21, 2018)

PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT OF WAYNE SCHNEYER (Dkt. 157, December 21, 2018)

PLAINTIFFS' MOTION TO EXCLUDE EXPERT REPORT OF JOHN H. JOHNSON, IV (Dkt. 158, December 21, 2018)

## I.    INTRODUCTION

On November 25, 2015, plaintiff Steve Oddo filed a putative class action against defendant United Technologies Corporation ("UTC") in this Court. Dkt. 1. On February 12, 2016, defendant UTC filed a motion to dismiss plaintiff's complaint. Dkt. 19. On February 18, 2016, both parties agreed that, in lieu of responding to UTC's motion, Oddo would file an amended complaint. Dkt. 24. On March 7, 2016, Oddo and additional plaintiffs Rajene Reardon, Anthony LaSala, Linda Lamm, Keith Kimball, Norman Klinge, and Dan Gallagher filed the operative amended complaint against UTC, and added defendants Arcoaire Air Conditioning and Heating ("Arcoaire"), Carrier Corporation ("Carrier"), Bryant Heating and Cooling Systems ("Bryant"), Comfortmaker

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|----------|----------------------|------|----------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Air Conditioning and Heating ("Comfortmaker"), and International Comfort Products, LLC ("ICP"). Dkt. 27 ("AC"). In brief, plaintiffs allege injury arising from manufacturing defects in heating, ventilation, and air conditioning units ("HVAC units") manufactured by ICP, which purportedly causes a sludge or tar to form in the system, making it likely that the HVAC units will fail at some point in the future. Id. ¶¶ 1–2.

Plaintiffs asserted the following claims in the amended complaint: (1) violations of the Magnuson-Moss Warranty Act; (2) negligent misrepresentation; (3) unjust enrichment; (4) breach of contract of warranty; (5) fraudulent concealment; (6) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (7) false and misleading advertising, Cal. Bus. & Prof. Code §§ 17500 et seq.; (8) violations of the California Consumer Legal Remedies Act ("CLRA"); (9) breach of express warranty, Cal. Com. Code § 2313; (10) violations of the Song-Beverly Act; (11) violation of the Arizona Consumer Fraud Act; (12) breach of implied warranty, Ariz. Rev. Stat. § 47-2314; (13) violations of the Florida Deceptive and Unfair Trade Practices Act; (14) breach of express warranty, Fla. Stat. § 672.313; (15) breach of implied warranty of merchantability, Fla. Stat. § 672.314; (16) violations of the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"); (17) violations of the Georgia Fair Business Practices Act ("GFBPA"); (18) breach of express warranty, O.C.G.A. § 11-2-313; (19) breach of implied warranty of merchantability, O.C.G.A. § 11-2-314; (20) violations of the Indiana Deceptive Consumer Sales Act ("IDCSA"); (21) breach of express warranty, Ind. Code Ann. § 26-1-2-313; (22) breach of implied warranty of merchantability, Ind. Code Ann. § 26-1-2-314; (23) violations of the Maryland Consumer Protection Act; (24) breach of express warranty, Md. Com. Code § 2-313; (25) breach of implied warranty of merchantability, Md. Com. Code § 2-314; (26) violations of the Missouri Merchandising Practices Act ("MMPA"); (27) breach of express warranty, Mo. Rev. Stat. § 400.2-313; and (28) breach of implied warranty, Mo. Rev. Stat. § 400.2-314.

On May 9, 2016, defendants filed a motion to dismiss plaintiffs' amended complaint. Dkt. 40. On January 24, 2017, the Court granted in part, and denied in part, defendants' motion to dismiss. Dkt. 57 ("MTD Order"). Plaintiffs elected not to amend their complaint. Dkt. 58. The remaining claims are as follows:

- Oddo's claims under California law for unjust enrichment, fraudulent concealment, negligent misrepresentation, and violations of the UCL, FAL, and CLRA based on defendants' alleged fraudulent omission and concealment of the defect;

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

- Klinge's claims under Missouri law for fraudulent concealment, negligent misrepresentation, and violations of the MMPA based on defendants' alleged fraudulent omission and concealment of the defect;

- Lamm's claims under Georgia law for violations of the GFBPA and GUDTPA based on defendants' alleged fraudulent omission and concealment of the defect;

- Gallagher's claim under Indiana law for violations of the IDCSA based on defendants' alleged fraudulent omission and concealment of the defect.

MTD Order at 39.

On August 3, 2018, plaintiffs filed the instant motion for class certification. Dkt. 115 ("Mot."). In support of their motion, plaintiffs filed 96 exhibits, including the Expert Report and Rebuttal Report of plaintiffs' expert, Paul J. Sikorsky. Dkt. 115-3 ("Sikorsky Report") and Dkt. 115-10 ("Sikorsky Rebuttal Report"). Defendants filed an opposition on November 2, 2018. Dkt. 134 ("Opp'n"). In support of their opposition, defendants filed 55 exhibits, including the expert reports of defendants' experts Ravi Dhar, dkt. 134-3 ("Dhar Report"); Wayne Schneyer, dkt. 134-8 ("Schneyer Report"); Kevin White, dkt. 134-38 ("White Report"); and Dr. John H. Johnson IV, dkt. 134-43 ("Johnson Report"). Plaintiffs filed a reply on December 21, 2018. Dkt. 154 ("Reply"). In support of their reply, plaintiffs filed the Expert Rebuttal Report of Melissa Pittaoulis. Dkt. 154-8 ("Pittaoulis Report").

On November 2, 2018, defendants filed a motion to exclude the opinions of Sikorsky. Dkt. 137. Plaintiffs filed an opposition on December 21, 2018, dkt. 137, and defendants filed a reply on February 4, 2019, dkt. 177. On December 21, 2018, plaintiffs filed motions to exclude the expert reports of Dhar, Schneyer, and Johnson. Dkts. 156–158. Defendants filed their oppositions on February 4, 2019, dkts. 178–180, and plaintiffs filed their replies on February 25, 2019, dkts. 187–189.

The Court held a hearing on March 11, 2019. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

## II.    BACKGROUND

Plaintiffs allege the following facts.  UTC manufactures and distributes heating ventilation and air conditioning ("HVAC") systems through its subsidiary, ICP.  AC ¶ 56. ICP is a wholly-owned subsidiary of UTC and manufactures HVAC systems under various brands including, but not limited to, Carrier, Bryant, Arcoaire, Comfortmaker, and Heil.[1]  Id. ¶ 57.

Plaintiffs seek to recover damages that arose from an alleged manufacturing defect in their HVAC systems that has allegedly caused widespread failures of Thermal Expansion Valves ("TXVs") used in the units.  Id. ¶ 1.  The TXV "is a precision valve that controls the expansion of refrigerant central to the cooling process."  Id.  Plaintiffs allege that

> [t]he defect arises from a chemical rust inhibitor [("Ryconox")] added to the manufacturing process . . . which was incompatible with the refrigerant and lubricating oil used in the HVAC systems.  The rust inhibitor reacts with the refrigerant and/or oil and causes a tar or sludge to form when the systems are put into service.  This sticky substance then circulates through the system, and builds up layers of deposits on the inside of the system. . . .  [T]he tar can cause the TXV to become stuck, rendering the system inoperable.

Id.  Plaintiffs further aver that Carrier was aware of the defect as early as 2013, but continued to sell affected units "unabated."  Id. ¶ 4.  Carrier allegedly admitted the existence of the manufacturing defect in dealer service bulletins ("DSBs") in 2014, but did not pull the affected systems from the shelves of distributors.  Id.  Plaintiffs allege that Carrier did not distribute the DSBs publicly, therefore consumers and contractors were not made aware of the defect.  Id.

Carrier's HVAC systems are sold with a ten-year limited parts warranty if the consumer registers the units, otherwise the limited warranty lasts five years.  Id. ¶ 30. According to plaintiffs, Carrier's "purported solution for the manufacturing defect under their warranty program does not cure the defect."  Id. ¶ 19.  Carrier initially provided replacement TXVs and a labor credit of $400 between July 2014 and October 2014.  Id. ¶ 20.  On October 23, 2014, plaintiffs allege that Carrier adopted a new approach by

---

[1]      The parties and the Court refer to defendants collectively as "Carrier."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|----------|----------------------|------|----------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

providing to contractors a new chemical, A/C Re-New, that was supposed to break apart the sludge in systems. Id. A/C Re-New was provided at no cost and in conjunction with a $195 labor credit. Id. Plaintiffs contend, however, that both of these courses of action fail to completely remedy the defect—the existence of chemical impurities in the HVAC system. Id. ¶¶ 22–23. Moreover, plaintiffs assert that "A/C Re-New *merely adds more contamination*" and that "[t]he long-term effects of this so-called fix are, at best, unknown." Id. ¶¶ 23, 25 (emphasis in original). Plaintiffs aver that "the injection of A/C Re-New itself may shorten the lifespan of the equipment or cause other issues in the future, after the warranty has expired, while the original contamination still remains in the system." Id. ¶ 25. One of Carrier's DSB even warns that a second injection of A/C Re-New "could have negative long term system effects." Id. ¶ 26.

According to plaintiffs, an adequate remedy would have included "flushing the contaminated refrigerant and oil from the systems, replacing filters, and replacing TXV valves." Id. ¶ 27. However, Carrier is allegedly refusing to provide non-defective replacements and/or fully compensate consumers and contractors. Id. ¶ 32.

Plaintiffs allege that Oddo, a resident of California, purchased a new Arcoaire-branded HVAC system in May 2015. Id. ¶ 36. Plaintiffs aver that, "[p]rior to his purchase, Oddo extensively reviewed Arcoaire's website and marketing materials . . . ." The materials that Oddo reviewed advertised that Arcoaire systems are "BUILT TO LAST" and that the system he purchased was "high efficiency" and capable of up to a 16 Seasonal Energy Efficiency Ratio ("SEER"). Id. None of those materials disclosed the existence of a manufacturing defect. If they had, Oddo would not have purchased the system. Id. In addition, Oddo was unaware of Carrier's DSBs at the time of his purchase. Id. In August 2015, Oddo's system failed as a result of a "sticking TXV," and per the manufacturer's recommendation, Oddo had his HVAC unit injected with A/C Re-New. Id. ¶ 37. Oddo claims that, due to the manufacturing defect in his HVAC system, his energy bills have increased and he has incurred out-of-pocket expenses for the injection of A/C Re-New. Id. On September 8, 2015, Oddo—through his counsel—sent a certified letter "to Warranty Claims, P.O. Box 4808, Syracuse, NY 13221, stating that, 'UTC and/or its subsidiaries have failed to comply with the terms of their express warranties by failing to replace the defective systems and/or component parts.'" Id. ¶ 38. In the letter, which is attached to the operative complaint, Oddo stated that UTC has violated the California Consumer Legal Remedies Act, the Magnusson-Moss Warranty Act, and other state statutory and common laws. Dkt. 27-1 ("Oddo Letter"). Oddo

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|----------|------------------------|------|----------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

demanded, inter alia, that UTC "[r]eplace the defective HVAC Systems, or all such parts (including refrigerant and oil) as are necessary to fully remove all contaminants" and "[c]ompensate Claimant and all purchasers and contractors who incurred costs and/or labor to repair defective systems." Id.

Lamm, a resident of Georgia, purchased two new Bryant HVAC systems costing approximately $10,000 in total in March 2015. Id. ¶ 43. Prior to purchase, Lamm reviewed Bryant's website, which stated that consumers who purchased the same model would "enjoy reliable, whole-home comfort" and that the model was "designed to operate consistently and quietly with SEER ratings of 15 or higher." Id. The Certificate of Product Ratings for Lamm's system states that it has a 16 SEER. Id. Neither the Bryant website nor the Certificate of Product Ratings disclosed the existence of a defect. Id. Plaintiffs allege that Lamm would not have purchased her HVAC units if those materials had disclosed a defect. Id. In addition, Lamm was unaware of Carrier's DSBs at the time of her purchase. Id. In June 2015, Lamm's downstairs system completely shut down. Id. ¶ 44. On June 25, 2015, an authorized contractor dispatched a service technician to her home, who reported injecting A/C Re-New as part of Bryant protocol. Id. Concerned about the long term effects of A/C Re-New, Lamm contacted Bryant customer service on July 8, 2015, who told her that they did not know what the long term effects of A/C Re-New would be. Id. Nonetheless, A/C Re-New was added to Lamm's system. Id.

Klinge, a resident of Missouri, purchased a Comfortmaker HVAC system in April 2015. Id. ¶ 47. Prior to purchase, Klinge reviewed the system's product efficiency and capacity information. Id. Klinge's system was advertised as being capable of 13 SEER which is also stated in the product specifications booklet he received at the time of purchase. Id. None of these materials disclosed the existence of a manufacturing defect. Id. If they had, Klinge would not have purchased his system. Id. In addition, Klinge was unaware of Carrier's DSBs at the time of the purchase and installation of his system. Id. In the summer of 2015, Klinge's noticed that his system was not working properly. Id. ¶ 48. Klinge called the authorized installer, who recommended adding approximately four ounces of refrigerant, but this did not solve the problem. Id. Klinge called another service technician, who diagnosed the problem as a "sticking TXV." Id. In September 2015, a technician replaced the TXV, which Klinge purchased. Id. However, the system allegedly continued to fail, and the service technician injected it with A/C Re-New. Id. Klinge has incurred approximately $433 in out-of-pocket expenses, and avers that even after the system was injected with A/C Re-New, it has failed to operate properly. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. |

Klinge contacted Comfortmaker's customer service but was told that they would not do anything about this problem and would not reimburse him for his out-of-pocket expenses. Id.

Gallagher, a resident of Indiana, purchased a new Bryant HVAC system in May 2014. Id. ¶ 49. Gallagher reviewed Bryant's website and marketing materials prior to purchase. Gallagher's system was advertised as being capable of up to 16 SEER but at installation it was specified as 13 SEER because of a lack of certain equipment on the existing furnace/air handler. Id. None of these materials disclosed the existence of a manufacturing defect. If they had, Gallagher would not have purchased the unit. Id. In addition, Gallagher was unaware of Carrier's DSBs at the time of his purchase. Gallagher's unit had two system failures within 90 days of being turned on. Id. ¶ 50. On the first failure, the indoor coil iced up and the service technician replaced the TXV. Four hours later, the same failure occurred. Id. In response, the service technician replaced the TXV and the indoor coil. Id. Gallagher contacted Bryant by phone on August 26, 2014, but Bryant allegedly did not reveal the ongoing TXV problem. Id. In early May 2015, Gallagher's system stopped working, and it was serviced and injected with A/C Re-New. Id.

## III. LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a) . . ., and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P .A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351. However, the Supreme Court has strongly cautioned that "merits questions may be considered to the extent—but only to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." <u>Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 466 (2013).

First, plaintiffs must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 155 (1982) (quoting <u>Califano v. Yamasaki</u>, 442, U.S. 682, 701 (1979)). Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). <u>Dukes</u>, 564 U.S. at 345. Plaintiffs here seek to maintain certification under Rules 23(b)(2), 23(b)(3), and in the alternative, Rule 23(c)(4).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(c)(4) allows an action to "be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997)). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. <u>Id.</u> Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. <u>In re N.D. Cal., Dalkon Shield IUD Products Liability Litig.</u>, 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

## IV.    DISCUSSION

### A.    The Proposed Classes

Plaintiffs seek certification of the following classes ("Proposed Classes") and appointment of the following Class Representatives:

### i.    California Class Represented by Oddo

Plaintiff Oddo seeks to be appointed class representative of the California Class, which is defined as follows:

> All original purchasers in California, including individuals and entities of new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units, and not for resale, that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Dkt. 117, Notice of Motion for Class Certification, at 1.  Plaintiffs clarify that they intend the term "original purchasers" to include both persons who acquired new HVAC units and purchasers of newly-constructed homes that contained HVAC units.  Id.  Oddo seeks certification of claims under California law for: (a) violations of the UCL, (b) violations of the FAL, (c) fraudulent concealment, and (d) negligent misrepresentation.  In the alternative, Oddo seeks certification of a claim under California law for unjust enrichment.  Id.

Oddo also seeks to be appointed class representative of a "CLRA Subclass," which is defined as follows:

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

> All original purchasers in California who purchased for personal, family, or household purposes, and not for resale, new 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Id. at 1–2. Oddo seeks certification of the CLRA subclass for violations of the CLRA. Id. at 2.

### ii. Missouri Class Represented by Klinge

Plaintiff Klinge seeks to be appointed class representative of the Missouri Class, which is defined as follows:

> All original purchasers in Missouri, including individuals and entities, that purchased for personal, family, or household purposes, and not for resale, new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Id. Klinge seeks certification of claims under Missouri law for: (a) violations of the MMPA, (b) fraudulent concealment, and (c) negligent misrepresentation. Id.

### iii. Georgia Classes Represented by Lamm

Plaintiff Lamm seeks to be appointed class representative of the Georgia Class, which is defined as follows:

> All original purchasers in Georgia, including individuals and entities, that purchased for personal, family, or household purposes, and not for resale, new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Id. Lamm seeks certification of the Georgia claims for violations of the GFBPA. Id.

Plaintiff Lamm also seeks to be appointed class representative of the Georgia Injunctive Relief Class, which is defined as follows:

> All original purchasing owners and subsequent owners in Georgia, including individuals and entities, that purchased new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Id. at 3. Lamm seeks certification of the Georgia Injunctive Relief class for violations of the GUDTPA. Id.

### iv. Indiana Class Represented by Gallagher

Plaintiff Gallagher seeks to be appointed class representative of the Indiana Class, which is defined as follows:

> All original purchasers in Indiana, including individuals and entities, that purchased for personal, family, or household purposes, and not for resale, new, 1.5- to 5-ton Carrier condensing units or Small Packaged air conditioning units that utilize 410A refrigerant and contain an Emerson scroll compressor with a serial number beginning 13L through 14H, but excluding the compressors identified by Emerson in CARRIER_0043279 as not containing Ryconox.

Id. at 3. Gallagher seeks certification of the Indiana class for violations of the IDCSA. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. |

## B.     The Classes are Not Cohesive

The Court declines to grant class certification of the Proposed Classes because the Proposed Classes are not sufficiently cohesive.  As explained below, the Court finds that plaintiffs cannot meet the typicality, commonality, and predominance requirements of Rule 23, because among other things, the Proposed Classes include purchasers of new homes which already had a Carrier HVAC system installed and who did not directly purchase a Carrier HVAC system.

### i.     Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact in common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350 (internal quotation marks and citations omitted).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

The gravamen of plaintiffs' fraudulent omission claims is that Carrier failed to disclose the defect to purchasers of Carrier HVAC units, and that the purchasers were injured when they spent more to purchase their Carrier HVAC systems than they would have had they known of the defect.  Reply at 24.  Plaintiffs, however, have made no showing that homebuyers would have paid less for their homes, or would have declined to buy their homes, if they had known that that the alleged defect was present in the HVAC systems of the homes they intended to purchase.  Nor is there any showing that homebuyers would have likely received notice of the existence of the defect had such notice been given at all

Moreover, plaintiffs fail to show that homebuyers suffered the same injury as purchasers of HVAC systems.  Plaintiffs characterize the common injury as "Plaintiffs' and the Class members' purchases of defective condensing units in the absence of material information as a result of Carrier's breach of its duty to disclose the defect." Reply at 19.  According to plaintiffs, this injury occurred at the time of purchase, id., and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

can be quantified by calculating "the difference between the actual value the class members paid (market price) and the actual value they received (a defective unit)," Mot. at 21. Plaintiffs do not explain how homebuyers could have suffered an injury in the form of paying a premium price for their HVAC units when they purchased a home that already had the Carrier HVAC system installed. Thus, it appears that homebuyers, if they suffered any injury at all, suffered an injury of a different nature than purchasers of new HVAC units.

The Court thus finds that the inclusion of homebuyers in the Proposed Classes renders plaintiffs unable to satisfy the commonality requirement of Rule 23(a)—homebuyers and purchasers of HVAC systems are too differently situated with respect to issues of exposure, materiality, and injury such that their claims are not capable of class-wide resolution.

### ii. Typicality

Rule 23(a) also requires plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; accord Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017). However, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). A court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon, 976 F.2d at 508.

Here, in addition to seeking to represent persons who directly purchased Carrier HVAC systems, plaintiffs also seek to represent persons who bought new homes with Carrier HVAC systems already installed. The Court finds that the claims of the plaintiffs—who purchased new HVAC units—are not typical of the claims of new homebuyers who may have never been exposed to any Carrier materials during the

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

homebuying process, much less attached the same level of importance, if any, to a disclosure of the alleged defect as would a purchaser of an HVAC unit. Accordingly, the Court finds that plaintiffs also fail to satisfy the typicality requirement of Rule 23(a).

### iii.    Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case, and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon, 150 F.3d at 1022). The predominance inquiry is similar to the one for commonality under Rule 23(a)(2) but it is more rigorous. Hanlon, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022. In contrast, when "claims require a fact-intensive, individual analysis," then class certification would "burden the court" and be inappropriate. Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 (9th Cir. 2009). The predominance inquiry begins with an analysis of the elements of the underlying cause of action. Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011).

### a.    Reliance and Materiality

"An essential element for a fraudulent omission claim is actual reliance." Daniel v. Ford Motor Co., 806 F.3d 1217, 1225 (9th Cir. 2015). "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." Id. "A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently." Id. (citation and quotation marks omitted). The first component of reliance "relates to whether one would have behaved differently, which 'can be presumed, or at least inferred, when the omission is material.'" Sloan v. Gen. Motors LLC, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018) (quoting Daniel, 806 F.3d at 1225). The second component of reliance "requires showing that '[p]laintiffs would have

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

been aware of a disclosure by [the defendant].'" Id. (quoting Daniel, 806 F.3d at 1225).[2] The Court will first analyze whether plaintiffs can establish materiality on a classwide basis, followed by an analysis of whether plaintiffs can establish that class members would have been aware of a disclosure of the alleged defect by Carrier if one had been made.

Carrier contends that individualized questions predominate with respect to both reliance and materiality because there is no evidence that "every class member would view as material the fact that a small and continually decreasing percentage of systems could develop temporary and remediable TXV clogs and then work without complaint for years." Opp'n at 20. Indeed, plaintiffs' only evidence to this effect are Carrier's surveys showing that, generally, "reliability" and "quality" are the two most important factors considered by purchasers. Reply at 17 (citing Dkt. 115-29, Plaintiffs' Ex. 27). At the hearing, plaintiffs argued that materiality can be proven on a classwide basis because, according to plaintiffs, Carrier itself believed that the alleged defect was material.[3] The

---

[2]     The parties' briefing on reliance, causation, and classwide exposure relies almost entirely on California law. The Court recognizes that in class actions, relief under the UCL, CLRA, and FAL is available "without individualized proof of deception, reliance and injury," so long as the named plaintiff demonstrates reliance, injury, and causation. Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289, (Cal .Ct. App. 2002); In re Tobacco II, 46 Cal.4th at 326–27. Accordingly, the Court will apply California law when analyzing whether plaintiffs can meet the predominance requirement because if the omissions claims cannot be certified under California's consumer protection laws, they may not be certified as to plaintiffs' Indiana and Georgia claims because the laws of those states also require a plaintiff to demonstrate reliance and causation. Tiismann v. Linda Martin Homes Corp., 281 Ga. 137, 138 (2006) (Georgia: "a claimant who alleges the [GFBPA] was violated as a result of a misrepresentation must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation" and that he exercised proper diligence to ascertain the falsity of the alleged misrepresentation); In re Actiq Sales & Mktg. Practices Litig., 790 F. Supp. 2d 313, 323 (E.D. Pa. 2011) (Indiana: concluding that the IDCSA does not require direct reliance on a supplier's deceptive acts, but nonetheless requiring plaintiffs to demonstrate "any reasonable reliance").

[3]     In support of this argument, plaintiffs rely on an internal memorandum circulated by Carrier which indicated that the HVAC units were covered by a "[c]ontractual

---

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Court is not persuaded by this argument because the materiality analysis focuses on whether a reasonable *consumer*—not Carrier—would have considered information about the alleged defect to be important in their decision to purchase Carrier's HVAC system.

The Court finds that individualized questions regarding reliance, materiality, and causation would overwhelm each of plaintiffs' claims. "[R]eliance and causation are susceptible to common proof only if the state law at issue follows a 'reasonable person' standard for assessing the materiality of the misstatement." See In re 5-Hour Energy Mktg. & Sales Practices Litig., No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *6 (C.D. Cal. June 7, 2017). As a preliminary matter, the court observes that the GFBPA and IDCSA appear to require a showing of actual reliance as to each individual class member, and thus a classwide inference of reliance is not available to plaintiffs as to these claims. See O.C.G.A. § 10-1-399 ("a claimant who alleges the [G]FBPA was violated as the result of a misrepresentation must demonstrate that he was injured as a result of the reliance upon the alleged misrepresentation"); Ind. Code § 24-5-0.5-4(b) ("Any person who is entitled to bring an action [under the IDCSA] . . . may bring a class action against such supplier on behalf of any class of persons of which that person is a member and which has been damaged by such deceptive act . . ."); In re Sears, Roebuck & Co., [x], 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009) (rejecting plaintiff's argument that only the named plaintiff must demonstrate reliance under the IDCSA). Accordingly, individualized inquiries of reliance predominate with respect to whether any given member of the Indiana and Georgia classes relied on Carrier's alleged omission when purchasing his or her HVAC unit.

The laws governing plaintiffs' California and Missouri consumer protection and common law claims, on the other hand, do follow a "reasonable person" standard. Id. at

---

warranty against defects in material and workmanship," and stated that "these are material defects." Dkt. 144-5. Plaintiffs argued at hearing that this memorandum was essentially an admission by Carrier that the presence of Ryconox in the HVAC systems was a "material" defect in the sense that the defect was significant, and Carrier responded that the memorandum merely meant "material defect" in the sense that the materials, not the workmanship, were defective. The Court shares Carrier's view of this document, but in any event, the Court finds that whether Carrier considered this defect to be material— as in significant—is tangential to the issue of whether a reasonable consumer would have viewed the defect to be material.

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

\*7; Mo. Code Regs. Ann. Tit. 15 § 60-9.110.  A misstatement or omission is material if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." 5-Hour Energy, 2017 WL 2559615, at \*7; see also Mo. Code Regs. Ann. Tit. 15, § 60-9.010 (A "[m]aterial fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision.").[4]  Plaintiffs have not provided any evidence demonstrating that a homebuyer would have attached the same level of importance, if any, to a disclosure of the alleged defect if one had been made, compared with purchasers of Carrier HVAC systems.  It thus appears, based on the proposed class definitions before the Court, that individualized questions of materiality predominate over common issues.

### b.    Classwide Exposure

Carrier also argues that plaintiffs cannot meet the predominance requirement because plaintiffs cannot demonstrate uniform exposure to the same misrepresentations. Opp'n at 12.  Plaintiffs respond that the proper focus in an omissions-based case is not whether class members were exposed to the same misrepresentations, but rather whether "class members would have been aware of a disclosure if one had been made."  Reply at 4.  To that end, plaintiffs argue that a reasonable class member "more-likely-than-not" would have been aware of a disclosure if Carrier had: (1) instructed its distributors and dealers to disclose the defect, which plaintiffs contend is the "standard stream of information" for the industry; (2) disclosed the defect on the product itself; or (3) made disclosures in its product information and marketing materials.  Reply at 7–11.  Plaintiffs also assert, without any evidence or expert testimony, that "no consumer acquires an HVAC system without being exposed to some information from the manufacturer." Reply at 12.

---

[4]    Although it is unclear whether the MMPA requires private plaintiffs to demonstrate reliance, plaintiffs must at least demonstrate that Carrier's alleged omission was material.  See 15 Mo. Rev. Stat. § 60-9.110 ("Omission of a material fact is any failure by a person to disclose material facts known to him/her . . . Reliance and intent that others rely upon such . . . omission are not elements of . . . omission as used in [the MMPA]"); Craft v. Philip Morris Companies, Inc., 190 S.W.3d 368, 384 (Mo. Ct. App. 2005) (explaining that it is unsettled law in Missouri whether a private plaintiff seeking damages under the MMPA must prove reliance or causation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|----------|----------------------|------|----------------|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

In making this argument, plaintiffs rely heavily on a line of cases involving alleged defects in new cars sold by authorized dealerships. In <u>Daniel v. Ford Motor Co.</u>, 806 F.3d 1217 (9th Cir. 2015), purchasers of Ford Focus vehicles from authorized Ford dealerships filed a class action alleging that Ford failed to disclose an alleged defect in the rear suspension at the time of sale. <u>Id.</u> at 1221. The district court granted summary judgment on plaintiffs' CLRA and UCL claims after concluding that the plaintiffs failed to show reliance. <u>Id.</u> Ford provided evidence that the plaintiffs had not viewed any of Ford's advertising materials prior to purchase, but the Ninth Circuit found that plaintiffs had nonetheless created a genuine issue of material fact as to whether plaintiffs would have been aware of a disclosure by Ford by "present[ing] evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses." <u>Id.</u> at 1226. The district court in that case subsequently certified the class explaining that "because plaintiff's class includes only purchasers of new Focuses who, presumably, interacted with Ford dealers prior to purchase, that inquiry [ ] is amenable to class-wide resolution." <u>Daniel v. Ford Motor Co.</u>, No. CV 2:11-02890 WBS EFB, 2016 WL 8077932, at *8 (E.D. Cal. Sept. 23, 2016). <u>See also</u> <u>Sloan v. GM, LLC</u>, 287 F. Supp. 3d 840, 873–76 (N.D. Cal. 2018) (denying GM's motion to dismiss fraudulent omission claim because plaintiffs alleged that they purchased their vehicles directly from authorized GM dealerships).

The Court acknowledges that the proper focus in an omissions case is "what channels of information customers depend on and whether the defendant could have taken action to disseminate information through those channels . . ." <u>Sloan</u>, 287 F. Supp. at 873–76. However, plaintiffs are stretching this logic so as to suggest that virtually any class can be certified in an omissions-based case as long as the defendant could have, in theory, ensured that a disclosure would reach its consumers. This conclusion is not supported by <u>Daniel</u>, or any other authority relied upon by plaintiffs. In <u>Daniel</u>, the district court ultimately certified a class because the plaintiff's proposed class was limited to purchasers of New Focuses who "presumably" interacted with Ford representatives. 2016 WL 8077932, at *8. There, because the class was only limited to persons who purchased their cars directly from Ford authorized dealerships, it was reasonable for the Court to conclude that there was a classwide method for determining that Ford failed to make a disclosure and that such a disclosure could have been made by Ford representatives at the point of purchase. Here, plaintiffs do not offer a narrowly tailored class definition but rather provide three hypothetical means by which full disclosure could have been effectuated to purchasers of Carrier HVAC systems. But these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

hypothetical means of disclosure still do not account for persons who bought homes with HVAC systems already installed, or purchasers of HVAC systems who relied on a contractor to select an HVAC system for them.[5] See Dhar Report ¶¶ 128–36. Thus, unlike Daniel, there does not appear to be a meaningful classwide method here for determining whether any disclosure by Carrier would have reached class members.

Accordingly, individualized issues also predominate with respect to whether any given class member would have been exposed to Carrier's disclosure of the alleged defect if it had made one. See McVicar v. Goodman Glob., Inc., No. SA CV 13-1223 DOC (RNBx), 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015) (denying class certification of omission-based California consumer protection claims involving allegedly defective air conditioners because "many members of the class never purchased the air conditioners, and instead, purchased real property already containing one").

---

[5]     Plaintiffs' various theories for establishing classwide exposure are also unavailing for the following reasons. First, plaintiffs argue that exposure on a classwide basis can be established because certain federal regulations require Carrier to provide information to homeowners and consumers prior to purchase. However, plaintiffs provide no evidence establishing that, in practice, consumers and homebuyers would have actually learned about the alleged defect if Carrier had made a disclosure using this this particular mode of communication. Next, plaintiffs argue that a reasonable class member would have been aware of a disclosure if Carrier had placed one on the product itself. But plaintiffs rely on cases involving disclosures on products that are visible to the consumer at the point-of-purchase. HVAC units, however, are not typically seen by a purchaser until *after* they have been purchased. Dkt. 134–46 at 166:4–15 (Pittaoulis agreeing that it would "[p]robably not" be "reasonable to expect that a consumer would review the product packaging prior to making a decision to purchase" an HVAC system). Finally, plaintiffs argue that Carrier could have made disclosures in its product information and marketing materials. However, the evidence plaintiffs rely on indicates that a disclosure on Carrier's website would have reached, at most, 46% of purchasers, and plaintiffs do not explain how homebuyers would have seen Carrier's marketing materials prior to purchasing their homes.

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Accordingly, the Court declines to certify plaintiffs' Proposed Classes under Rule 23(b)(3).[6]

### C.        California Unjust Enrichment Class

In the alternative, plaintiffs seek to certify a California unjust enrichment class. "Under California law, the elements of unjust enrichment are: (1) the receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." In re ConAgra Foods, Inc., 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012) (citation omitted). "The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 684 (9th Cir. 2009) (quoting First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657 (1992)).

Plaintiffs contend that they will demonstrate that Carrier was unjustly enriched by the amount it avoided paying to properly remediate the contaminated units. Mot. at 16. Carrier argues that individualized questions predominate as to whether Carrier's retention of any benefit was "unjust" because this inquiry "depends on what materials California class members reviewed, whether those class members have experienced any problems with their unit, whether any problems they experienced could actually be traced to Ryconox, and so on." Opp'n at 32.

The Court declines to certify plaintiffs' unjust enrichment class because individualized issues predominate with respect to whether Carrier's retention of any benefit was "unjust." Here, it appears that the class includes purchasers who would have never been exposed to a disclosure of the defect even if one had been made, purchasers whose HVAC systems have never failed, as well as purchasers who obtained repairs from Carrier after their systems experienced a TXV failure. Any purchaser in one of the aforementioned scenarios would have difficulty proving that Carrier's receipt of any benefit was unjust in those circumstances. Thus, the Court finds that individualized inquiries predominate with respect to plaintiffs' unjust enrichment claim. See Berger v.

---

[6]        The Court does not reach the questions of whether plaintiffs' damage model can be used to establish damages on a classwide basis or whether plaintiffs can establish classwide exposure with respect to direct purchasers of HVAC systems.

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

Home Depot USA, Inc., 741 F.3d 1061, 1070 (9th Cir. 2014), abrogated on other grounds by Microsoft Corp. v. Baker, 137 S. Ct. 1702 (2017) ("Whether Home Depot's receipt of funds for the damage waiver was unjust or inequitable, thereby justifying restitution, depends on whether Home Depot told its tool rental customers that the waiver was an optional product. This determination, as explained above, necessarily rests on individualized determinations about the language of the contract signed by the customer, the placement and content of any signs, and the oral representations from Home Depot employees relating to the damage waiver.").

### D.    Rule 23(b)(2) Requirements

Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 986 (9th Cir. 2011).

Plaintiffs seek certification of Lamm's GUDTPA claim for injunctive relief under Rule 23(b)(2) (the "Georgia Injunctive Relief Class"). Lamm seeks an order "enjoining Carrier from injecting Zerol Ice in the future, and from denying warranty coverage for failures caused by Zerol Ice and/or Ryconox." Mot. at 25. Carrier argues that the GUDPTA only provides for injunctive relief where the defendant has established a "future, nonspeculative harm which an injunction would remedy." Opp'n at 34 (quoting Collins v. Athens Orthopedic Clinic, 815 S.E.2d 639, 646–47 (Ga. Ct. App. 2018). Plaintiffs respond by citing to Amin v. Mercedez-Benz USA, LLC, 301 F. Supp. 3d 1277 (N.D. Ga. 2018), which denied the defendant's motion to dismiss the plaintiffs' GUDTPA claim because the plaintiffs alleged that the defendants continued to charge purchasers for ongoing repair procedures that did not actually address the alleged defects. Id. at 1295.

The parties' arguments entirely focus on whether Lamm's future injuries are speculative and neglect to discuss the fact that the Court has already dismissed plaintiffs' GUDPTA claim to the extent it relies on allegations that Carrier "imposed repairs that caused further damage." MTD Order at 21 ("[P]laintiffs' allegations with respect to the potential damage caused by the injection of A/C Re-New are speculative and do not establish that the repairs are unsuccessful. Therefore, the Court concludes that plaintiffs

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

may not maintain [the GUDTPA claim] based on allegations that Carrier . . . imposed 'repairs' that caused further damage."). Lamm's GUDTPA claim only withstood the motion to dismiss to the extent it was based on allegations of Carrier's fraudulent omissions and concealment. Id. at 19.

Under GUDPTA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Amin, at 301 F. Supp. 3d at 1293. Here, Lamm seeks injunctive relief based on a claim that has been dismissed by this Court, and Lamm has provided no explanation for how the injunctive relief she seeks is related to Carrier's alleged fraudulent omissions. Rather, it appears that Lamm can only properly seek an injunction related to Carrier's marketing and advertising practices. But even if the Court were to construe Lamm's motion accordingly, Lamm would be unable to demonstrate that she is likely to benefit from such an injunction since there is nothing in the record that suggests she intends to purchase an affected Carrier HVAC system in the future.

Accordingly, the Court **DENIES** Lamm's request to certify the Georgia Injunctive Relief Class under Rule 23(b)(2).

### E.    Motions to Strike Expert Testimony

Both parties raise numerous issues with the expert testimony proffered by the opposing party. However, even accepting plaintiffs' expert testimony in its entirety, and disregarding Carrier's expert testimony, the Court finds that class certification is inappropriate for the reasons stated above. Accordingly, the Court **DENIES** the parties' various motions to strike expert testimony as moot.

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01985-CAS(Ex) | Date | March 22, 2019 |
|---|---|---|---|
| Title | STEVE ODDO ET AL. v. ARCOAIRE AIR CONDITIONING AND HEATING ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES without prejudice** plaintiffs' motion for class certification.  Plaintiffs shall have 120 days to file a renewed motion for class certification.

The Court **DENIES** as moot Carrier's motion to exclude opinions of Sikorsky and plaintiffs' motions to exclude the expert reports of Dhar, Schneyer, and Johnson.

IT IS SO ORDERED.

_____ : _____

Initials of
Preparer

SMO